IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL NEUMAN,                                    Case No. 6:12-cv-00777-AA
                                                        OPINION AND ORDER
                Plaintiff,

        vs.

J.D. MOSER, a police officer
employed by the CITY OF PHILOMATH,
a municipal corporation

                Defendant.

_____

Paul B. Meadowbrook,
913 First Avenue East
Albany, Oregon 97321
        Attorney for plaintiff

Gerald L. Warren,
901 Capitol Street Northeast
Salem, Oregon 97301
        Attorney for defendant


PAGE 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant Jonathan Grant Moser moves for summary judgment, pursuant to Fed. R. Civ. P. 56, on plaintiff Paul Neuman's complaint.  Plaintiff requests leave to file an amended complaint pursuant to Fed. R. Civ. P. 15.  For the reasons set forth below, defendant's motion is granted, plaintiff's motion is denied, and this case is dismissed.

## BACKGROUND

Prior to divorcing, plaintiff and Julie Patton had three children together, including daughter Savannah.  After their divorce, Patton obtained a restraining order against plaintiff in Benton County Circuit Court.  Patton renewed the restraining order each year thereafter, such that it was valid at all relevant times.  The order states, in pertinent part, that:[1]

> Respondent is restrained (prohibited) from entering or
> attempting to enter the following locations (list names
> and addresses unless withheld for safety reasons.)
> a.    Petitioner's current or subsequent residence:
> b.    Petitioner's current or subsequent place of
>       employment:
> c.    Petitioner's current or subsequent school:
> d.    The area surrounding petitioner's current or
>       subsequent residence or petitioner's school,
>       business, place of employment or other named
>       premises described as follow (specifically
>       describe the areas): <u>Entire property - 20 acre
>       parcel</u>

---

[1] Underlined portions were handwritten and not part of the order's boilerplate language.  All sections, except section f, are followed by the approving judge's initials.  Further, the full restraining order is initialed and signed by the judge at the end of the document.

PAGE 2 - OPINION AND ORDER

  e. Respondent shall not be within <u>150</u> feet of
   petitioner unless otherwise ordered by the court.
  f. Other locations: <u>Noah's Ark Pre-school,</u>
   <u>Philomath High School</u>
 Respondent is restrained (prohibited) from entering or
 attempting to enter (list names and addresses unless
 withheld for safety reasons):
  a. The premises of the children's current or
   subsequent day care provider: <u>Noah's Ark Pre-</u>
   <u>school</u>
  b. The children's current or subsequent school:
   <u>Philomath High School</u>

Warren Decl. Ex. 1, at 4. In addition, the restraining order

grants sole physical custody of the children to Patton and does

not give plaintiff parenting time. It also precludes plaintiff

from "intimidating, molesting, interfering with, or menacing, or

attempting to intimidate, molest, interfere, or menace, the minor

children in petitioner's custody." <u>Id.</u> at 3. Finally, the order

explicitly states that a violation of its terms could result in

arrest.

  On May 12, 2010, plaintiff entered Philomath High School's

gymnasium to watch an award assembly in which Savannah was

participating. Prior to arriving at the school, plaintiff spoke

with Peter Tuana, Superintendent of the Philomath School

District, and told Tuana of his intent to attend the assembly.

Tuana informed plaintiff that he would have to stay 150 feet away

from Patton and, because the gymnasium was about 108 feet in

length, he should not attend. When plaintiff came despite this

warning, Tuana met plaintiff at the door of the gymnasium and

escorted him to a room within the main office. The high school's

PAGE 3 - OPINION AND ORDER

office manager, Doreen Hamilton, was subsequently approached in the main office by Patton, who was distraught to learn plaintiff was in the high school.  Patton gave Hamilton a copy of her restraining order against plaintiff.

Hamilton then contacted defendant, who is a police officer at the Philomath Police Department and who was on school grounds for an unrelated matter, and informed him of the incident.  She also handed him the copy of the restraining order.  Because the copy provided did not list the details of any restraints, defendant contacted dispatch to confirm the order's validity and conditions.  The dispatcher and Civil Deputy Barnes, of the Benton County Sheriff's Office, reviewed the restraining order and outlined its conditions to defendant.  Specifically, they told defendant that plaintiff was not to be within 150 feet of Patton or their children, although the restraining order does not, in fact, restrict plaintiff from being within 150 feet of his children.

Upon receipt of this information, defendant went to the main office and Tuana informed him that plaintiff had previously been told not to attend the assembly because the length of the gymnasium would cause plaintiff to be in violation of his restraining order.  When defendant contacted plaintiff, plaintiff informed him that he was allowed to attend his daughter's sporting events and graduation.  Defendant knew that the event in

PAGE 4 - OPINION AND ORDER

question was neither a sporting event nor graduation and subsequently arrested plaintiff for violating the restraining order.  All charges from the incident were ultimately dropped.

On May 1, 2012, plaintiff filed a complaint in this Court, alleging that defendant deprived him of his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  On April 25, 2013, defendant moved for summary judgment.  On June 4, 2013, plaintiff filed a motion to amend the complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the [moving party] is entitled to a judgment as a matter of law."  Fed. R. Civ. P 56(a).  Materiality is determined by substantive law; only those facts that are outcome determinative may properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A material fact is "genuine" if, from the evidence, a reasonable jury could find in favor of either party.  Id. at 247.  The existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment.  Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v.

PAGE 5 - OPINION AND ORDER

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  If this burden is met, the nonmoving party must then detail specific facts, beyond the pleadings, which show the existence of a genuine issue for trial. <u>Id.</u> at 324.  Inferences must be drawn in the light most favorable to the nonmoving party and reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

### DISCUSSION

Defendant argues that he is entitled to summary judgment because he had probable cause to arrest plaintiff or, alternatively, that he is protected by qualified immunity because his actions were reasonable.

To prevail on a claim under U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted).  It is undisputed that defendant is a state actor under 42 U.S.C. § 1983.  Thus, this case hinges on whether defendant deprived plaintiff of an existing right or is otherwise entitled to qualified immunity.

The doctrine of qualified immunity shields government officials from liability under § 1983 insofar as their conduct

PAGE 6 - OPINION AND ORDER

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold inquiry is: (1) whether the officer's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged misconduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Either prong may be addressed first and if the answer to either question is "no," then qualified immunity applies and the defendant cannot be held liable.  Glenn v. Washington Cnty., 673 F.3d 864, 870 (9th Cir. 2011).

I.  Whether a Constitutional Violation Occurred

The Fourth Amendment protects a person's right to be free from unreasonable searches and seizures.  A "warrantless arrest does not violate the Fourth Amendment if the officers had probable cause."  Picray v. Sealock, 138 F.3d 767, 770 (9th Cir. 1998) (citation omitted).  The existence of probable cause turns on whether, at the time of the arrest, the facts and circumstances within the officer's knowledge, based on reasonably trustworthy information, were sufficient for a prudent person to believe that the plaintiff had committed a crime.  Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001); see also United States v. Lopez, 482 F.3d 1067, 1078 (9th Cir. 2007).

The officer investigating a violation of a restraining order is responsible for determining its provisions.  Beier v. City of

PAGE 7 - OPINION AND ORDER

Lewiston, 354 F.3d 1058, 1069 (9th Cir. 2004).  Protection orders "are not stamped from a single template"; thus, without reading or otherwise discerning the precise terms of an individual protection order, the officer cannot tell how the order is crafted or whether it was violated.  Id.  Officers who act to enforce protection orders have a "responsibility to familiarize themselves with the order's precise contents" and, if they are unable to do so themselves, they must determine the order's contents "through some official source," including a police dispatcher.  Id.

Considering the facts and circumstances within defendant's knowledge at the time of plaintiff's arrest, he reasonably believed a valid restraining order existed against plaintiff, that plaintiff was aware of such an order, and that he intentionally violated it.  Thus, defendant had probable cause to arrest plaintiff.

When defendant arrived in the main office of the high school, Hamilton gave him a copy of the restraining order and informed him that Patton and plaintiff were present at the school.  Moser Decl. ¶ 3.  Tuana also told defendant that plaintiff came to the school despite being warned that he would likely be in violation of the restraining order if he attended the event due to the gymnasium's dimensions.  Id. at ¶ 5. Defendant, however, did not just rely on the statements made by

PAGE 8 - OPINION AND ORDER

Tuana and Hamilton or the copy of the restraining order; rather, he contacted dispatch to confirm the existence and contents of that order. <u>Id.</u> at ¶ 4. The dispatcher informed defendant of its terms, incorrectly asserting that plaintiff was not to be within 150 of his children. <u>Id.</u> Defendant knew that plaintiff's daughter was inside the gymnasium and, if plaintiff was also inside, than he was within 150 feet of her and therefore in violation of the protective order.[2] <u>Id.</u> at ¶ 6-8.[3]

Thus, based on the totality of the facts and circumstances within defendant's knowledge at the time of the arrest - namely, that a protective order against plaintiff existed and that its terms, as relayed to him, had been violated - defendant had probable cause. That the information defendant relied on was ultimately incorrect is irrelevant because Deputy Barnes, a dispatcher/civil deputy, is a reasonably trustworthy source. <u>See, e.g.</u>, <u>United States v. Del Vizo</u>, 918 F.2d 821, 825 (9th Cir.

---

[2] To the extent that plaintiff argues that no probable cause existed because the restraining order did not apply to his daughter, this argument is rejected. Although the terms of the order do not forbid plaintiff from contacting his daughter, this does not affect whether defendant had probable cause based on the totality of the circumstances. Also, this Court notes that, at the time he was arrested, plaintiff was within 150 feet of Patton, which is expressly precluded by the restraining order.

[3] Plaintiff's assertion that, because he did not pose a safety threat to Patton, his daughter, or defendant, he should not have been arrested, is without merit. Aggression is not a factor in determining whether an individual has violated a protective order or otherwise committed a crime.

1990) (police officers making probable cause determinations must rely on "reasonably trustworthy" information); see also Beier, 354 F.3d at 1069.  Therefore, the arrest did not violate plaintiff's Fourth Amendment right to be free from unreasonable seizures.

## II.  Whether the Right was Clearly Established

Although defendant's motion for summary judgment succeeds at the first prong of the qualified immunity analysis, plaintiff's claim also fails because, even assuming probable cause was lacking, defendant's actions were nonetheless reasonable.

A right is "clearly established" for purposes of qualified immunity if the contours of the right are sufficiently clear such that a reasonable officer would understand that his actions violated that right.  Wilson v. Layne, 526 U.S. 603, 614-15 (1999).  In other words, if the officer reasonably believed that his conduct complied with the law, summary judgment based on qualified immunity is appropriate.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Plaintiff asserts that defendant acted unreasonably arresting him.  Plaintiff cites to Gerlack v. Roberts, 152 Or.App. 40, 952 P.2d 84, (1998), in support of his argument that defendant should have known that the restraining order's 150-foot restriction did not apply to the high school or plaintiff's daughter.  The restraining order in this case plainly prevents

PAGE 10 - OPINION AND ORDER

plaintiff from being within 150 feet of Patton and, additionally, can be reasonably read as preventing plaintiff from coming within 150 feet of Philomath High School. See generally Warren Decl. Thus, Gerlack is factually distinguishable and therefore not persuasive. See Gerlack, 152 Or.App. at 44-45 ("mere presence" of the defendant within 150 feet of the petitioner did not violate the plain language of a restraining order that was "limited to preventing [the defendant] from coming within 150 feet of petitioner's home, school, business, place of employment").

Regardless, as discussed above, even assuming defendant lacked probable cause, a reasonable officer, relying on the same information, would not know that his actions constituted a violation of the Fourth Amendment. Wilson, 526 U.S. at 614-15. In other words, based on the information defendant received from a reliable source regarding the contents of the restraining order and plaintiff's attendance at the Philomath High School event, which placed him within 150 feet of both Patton and Savannah, it was not unreasonable for defendant to conclude that plaintiff violated that order. Consequently, qualified immunity attaches and defendant is entitled to summary judgment on this basis.

II. Leave to File an Amended Complaint

Plaintiff requests leave to file an amended complaint in order to delete a factually inaccurate allegation in paragraph 13

PAGE 11 - OPINION AND ORDER

of the original complaint.   Because the proposed amendment does
not affect whether defendant had probable cause or is shielded by
qualified immunity, plaintiff's request is denied as futile.   See
Forsyth v. Hamana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997)
(citation omitted) (outlining factors considered in determining
whether a motion to amend should be granted); Bonin v. Claderon,
59 F.3d 815, 845 (9th Cir. 1995) ("[f]utility of amendment can,
by itself, justify the denial of a motion for leave to amend").

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary
judgment (doc. 15) is GRANTED.   Plaintiff's motion to amend the
complaint (doc. 26) is DENIED.   Plaintiff' request for oral
argument is DENIED as unnecessary.   This case is DISMISSED.

IT IS SO ORDERED.

Dated this 2ND day of July, 2013.


_____
Ann Aiken
United States District Judge


PAGE 12 - OPINION AND ORDER